**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO: 2:25-cv-14302-AMC**

**ANGELA BRANIGAN,**
individually and on behalf of all
others similarly situated,

Plaintiff,

v.

**CRUMBL FRANCHISING, LLC,**

Defendant.
_________________________________/

**CLASS ACTION**

**JURY TRIAL DEMANDED**

**FIRST AMENDED CLASS ACTION COMPLAINT[1]**

Plaintiff Angela Branigan brings this class action against Defendant Crumbl Franchising, LLC ("Defendant") and alleges as follows upon personal knowledge as to Plaintiff and Plaintiff's

[1] Amended as a matter of course pursuant to Federal Rule of Civil Procedure 15(a) as Defendant has filed a Motion to Compel Arbitration on August 28, 2025 [ECF No. 7], which is akin to a 12(b) motion. *See, e.g.*, *Balen v. Holland Am. Line Inc.*, 583 F.3d 647, 652 (9th Cir. 2009). Other Circuit Courts have held similarly. *See, e.g., Grasty v. Colorado Tech. Univ.*, 599 F. App'x 596, 597 (7th Cir. 2015) (concluding that "[m]otions to compel arbitration ... are brought properly under Federal Rule of Civil Procedure 12(b)(3)"). *See also Cancer Ctr. Assocs. for Research and Excellence, Inc. v. Phila. Ins.* Cos., No. 1:15-CV-00084 LJO MJS, 2015 U.S. Dist. LEXIS 51091, 2015 WL 1766938, at *2 (E.D. Cal. 2015) ("[C]ourts have held that a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction 'is a procedurally sufficient mechanism to enforce [an] [a]rbitration [p]rovision.'"); *Coup v. Scottsdale Plaza Resort, LLC*, 823 F. Supp. 2d 931, 938 (D. Ariz. 2011) (motion to compel arbitration may be properly brought pursuant to Rule 12(b)(1) or 12(b)(*6)); Cedars-Sinai Med. Ctr. v. Global Excel Mgmt., Inc.,* No. CV 09-3627, 2010 U.S. Dist. LEXIS 139848, 2010 WL 5572079, at *2 (C.D. Cal. 2010); *Lemberg v. LuLaRoe, LLC*, No. EDCV1702102ABSHKX, 2018 U.S. Dist. LEXIS 239291, 2018 WL 6927836, at * 3 (C.D. Cal. 2018). *See, e.g., Armendariz v. Ace Cash Express*, No. 3:13-CV-00590-BR, 2013 WL 3791438, at *1 (D. Or. July 19, 2013) (finding that a motion to compel arbitration "suffices as a 'responsive pleading' to Plaintiff's Complaint or as an unenumerated motion under Rule 12(b), and, therefore, Plaintiff was permitted to file a First Amended Complaint pursuant to Rule 15(a)(1)(B) without first obtaining leave of Court or consent of Defendant.").

own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys.

## NATURE OF THE ACTION

1. This is a putative class action pursuant to the Florida Telephone Solicitation Act ("FTSA"), Fla. Stat. § 501.059.

2. To promote its goods and services, Defendant engages in unsolicited text messaging and continues to text message consumers after they have opted out of Defendant's solicitations.

3. Through this action, Plaintiff seeks injunctive relief to halt Defendant's illegal conduct, which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life of thousands of individuals. Plaintiff also seeks statutory damages on behalf of Plaintiff and members of the Class, and any other available legal or equitable remedies.

## JURISDICTION AND VENUE

4. Defendant is subject to general jurisdiction in Florida because this suit arises out of and relates to Defendant's significant contacts with this State. Defendant initiated and directed, or caused to be initiated and directed, telemarketing and/or advertisement text messages into Florida in violation of the FTSA.

5. Venue for this action is proper in St. Lucie County, Florida because facts giving rise to this action occurred in St. Lucie County.

6. Plaintiff maintains that the Circuit Court of the Nineteenth Judicial Circuit in and for Saint Lucie County, Florida, where Plaintiff originally filed this action, has jurisdiction over the case because Defendant's Notice of Removal, [DE 1], fails to establish that CAFA jurisdiction.

## PARTIES

7. Plaintiff is a natural person who, at all times relevant to this action, was a resident of the Port St. Lucie, Florida.

8. Plaintiff is, and at all times relevant hereto was, an individual and a "person" as defined by 47 U.S.C. § 153(39) and the FTSA.

9. Defendant is a corporation whose principal office is located in Utah but Defendant directs, markets, and provides business activities throughout the State of Florida.

**FACTS**

10. Defendant has caused multiple text messages to be transmitted to Plaintiff's cellular telephone number ending in 7152 ("7152 Number"):







278625
Crumbl: Let us handle dessert this year! Preorder pies now!
cmbl.co/tq6GdG
STOP to opt out.
Tap to load preview
STOP
Crumbl: We are sorry to see you go. You have been unsubscribed and will receive no further messages. Reply SUBSCRIBE to re-subscribe.
Wednesday, Nov 27 • 9:02 AM
crumbl
Thanksgiving Pies!


278625
Crumbl: Today's your last chance to grab our delicious Thanksgiving pies, available now in two sizes!
cmbl.co/3KdgKs
STOP to opt out.
Tap to load preview
Stop
Crumbl: We are sorry to see you go. You have been unsubscribed and will receive no further messages. Reply SUBSCRIBE to re-subscribe.


278625
Stop
Crumbl: We are sorry to see you go. You have been unsubscribed and will receive no further messages. Reply SUBSCRIBE to re-subscribe.
Wednesday, Dec 4 • 9:01 AM
JIMMY FALLON'S "HOLIDAY SEASONING" CANDY CANE BROWNIE
New!


278625
Crumbl: Your holiday treat awaits! Say hello to Jimmy Fallon's "Holiday Seasoning" Candy Cane Brownie!
cmbl.co/HwwcG8
STOP to opt out.
Tap to load preview
Thursday, Dec 19 • 10:22 AM
crumbl
Fa La La La
FLAVOR!
Crumbl: Bring on the holiday cheer with seasonal desserts made just for you!
cmbl.co/3CJrhJ


278625
cmbl.co/3CJrhJ
STOP to opt out.
Tap to load preview
Stop
Crumbl: We are sorry to see you go. You have been unsubscribed and will receive no further messages. Reply SUBSCRIBE to re-subscribe.
Monday, Dec 23 • 11:02 AM
crumbl


278625
Tap to load preview
Stop
Crumbl: We are sorry to see you go. You have been unsubscribed and will receive no further messages. Reply SUBSCRIBE to re-subscribe.
Thursday, Jan 2 • 11:39 AM
Cookies & Cream Tres Leches Cake


278625
Crumbl: Kick off 2025 with a sweet start—this new dessert is here to make your New Year unforgettable!
cmbl.co/ZKxVDB
STOP to opt out.
Tap to load preview
Thursday, Jan 2 • 5:14 PM
STOP
Crumbl: We are sorry to see you go. You have been unsubscribed and will receive no further messages. Reply SUBSCRIBE to re-subscribe.
Tuesday, Jan 21 • 10:16 AM
Rob's Backstage Caramel Popcorn Cookie
ft. The Jonas Brothers




11. Plaintiff has asked Defendant to stop contacting her on November 20, 2024, November 23, 2024, November 27, 2024, December 4, 2024, December 4, 2024, December 19, 2024, December 23, 2024, and January 2, 2025 but Defendant continued to send text messages to Plaintiff on November 23, 2024, November 27, 2024, December 4, 2024, December 4, 2024, December 19, 2024, December 23, 2024, and January 2, 2025, and January 21, 2025.

12. As demonstrated by the above screenshots, the purpose of Defendant's text messages was to solicit the sale of consumer goods and/or services.

13. As demonstrated by the above screenshots, the purpose of Defendant's text messages was to advertise, promote, and/or market Defendant's property, goods, and/or services.

14. As demonstrated by the above screenshots, Defendant does not honor consumer requests to opt-out of text message solicitations. Indeed, Plaintiff attempted to opt-out of Defendant's text message solicitations by responding, but Defendant continued to text message Plaintiff.

15. Defendant sent at least two solicitations after Plaintiff's initial opt-out request.

16. Defendant received Plaintiff's stop request, and acknowledged receipt of the request as shown below:




17. Plaintiff and the Class Members revoked any consent they may have previously provided to Defendant by replying with a "stop" or similar opt-out instruction in response to Defendant's text messages.

18. Plaintiff and the Class Members terminated any business relationship they may have previously had with Defendant by replying with a "stop" or similar opt-out instruction in response to Defendant's text messages.

19. Plaintiff is the regular user of the telephone number that received the above telephonic calls.

20. Plaintiff was in Florida when Plaintiff received the above text messages.

21. Plaintiff utilizes the cellular telephone number for personal purposes and the number is Plaintiff's residential telephone line. Plaintiff has no land-line phone number and this number is her only way to contact her when she is home.

22. Upon information and belief, Defendant maintains and/or has access to outbound transmission reports for all text messages sent advertising/promoting its services and goods. These reports show the dates, times, target telephone numbers, and content of each message sent to Plaintiff and the Class members.

23. Defendant's failure to honor consumer opt-out requests caused Plaintiff and the class members harm as they continued to receive text message solicitations after asking for those messages to stop.

24. To send the text messages, Defendant used a messaging platform (the "Platform"), which permitted Defendant to transmit blasts of text messages automatically and without any human involvement. The Platform automatically sent text messages to Plaintiff's and the Class members' stored telephone numbers with no human involvement after the texts were initiated utilizing the Platform. Defendant's use of a generic text message (depicted above) further demonstrates that Defendant utilizes automated dialing systems to mass transmit solicitation texts to consumers.

25. The Platform has the capacity to select and dial numbers automatically from a list of numbers.

26. The Platform has the capacity to schedule the time and date for future transmission of text messages.

27. The Platform also has an auto-reply function that results in the automatic transmission of text messages, which was utilized by Defendant as reflected above.

28. Defendant was not required to and did not need to utilize the Platform to send messages to Plaintiffs and the Class members. Instead, Defendant opted to use the Platform to maximize the reach of its text message advertisements at a nominal cost to Defendant.

29. Defendant would be able to conduct its business operations without sending automated text messages to consumers.

30. Defendant would be able to send automated text messages to consumers, and in compliance with the FTSA, by securing the proper consent from consumers prior to sending text messages.

31. Defendant would be able to send text messages to consumers without consent by utilizing a non-automated text messaging system.

32. Accordingly, it is not impossible for Defendant to comply with the FTSA in the context of transmitting text messages.

33. The burden and cost to Defendant of securing consent from consumers that complies with the FTSA is nominal.

34. Compliance with the FTSA will not result in Defendant having to cease its business operations.

35. Compliance with the FTSA will not result in Defendant having the alter the prices of any goods or services it provides in the marketplace.

36. Compliance with the FTSA will not force Defendant to seek regulatory approval from the State of Florida before undertaking any type of commercial transaction.

37. Plaintiff and the Class members revoked any consent they may have provided Defendant to text message them by responding with "stop" or similar opt-out instructions.

38. Defendant sent the same or similar text messages to Plaintiff and each putative class member in that the content of the messages consisted of advertising Defendant's homes and/or home building services.

39. Defendant's text message spam caused Plaintiff and the Class members harm, including violations of their statutory rights, trespass, annoyance, nuisance, invasion of their privacy, and intrusion upon seclusion. *See Drazen v. Pinto*, 74 F.4th 1336, 1346 (11th Cir. 2023) ("we hold that the receipt of an unwanted text message causes a concrete injury").

**CLASS ALLEGATIONS**

**PROPOSED CLASS**

40. Plaintiff brings this lawsuit as a class action on behalf of herself individually and on behalf of all other similarly situated persons as a class action pursuant to Florida Rule of Civil Procedure 1.220(b)(2) and (b)(3).

41. Plaintiff brings this case on behalf of the Classes defined as follows:

> **FTSA "STOP" Class: All persons in Florida who, since July 1, 2021 through the date of class certification, received one or more text messages, regarding Defendant's available homes, properties, and/or building services, to said person's cellular telephone number, more than fifteen (15) days after communicating to Defendant that they did not wish to receive text messages by replying to the text messages by sending a text message(s) with a "stop" instruction.**

> **FTSA Autodialer Class: All persons in Florida who, since July 1, 2021 through the date of class certification, received one or more text messages, utilizing the Platform, regarding Defendant's available homes, properties, and/or building services, to said person's cellular telephone number, more than fifteen (15) days after communicating to Defendant that they did not wish to receive text messages by replying to the text messages by sending a text message(s) with a "stop" instruction.**

42. Plaintiff reserves the right to modify the Class definitions as warranted as facts are learned in further investigation and discovery.

43. Defendant and its employees or agents are excluded from the Classes. Plaintiff does not know the number of members in each the Class but believes the Class members number in the several thousands, if not more.

NUMEROSITY

44. Given Defendant's use of an automated Platform to text message consumers, Plaintiff is informed and believes that there are at least 40 individuals that fall within each of the proposed classes. Additionally, given that Defendant provides home building services in Florida, Plaintiff is informed and believes that Defendant targeted Florida residents with its text message solicitations. The precise details regarding the total number of members of each class are solely within Defendant's possession as it sent or caused the text messages at issue to be sent, and only Defendant knows how many text messages were sent as it solely possesses the text message transmission logs. The members of the Class, therefore, are believed to be so numerous that joinder of all members is impracticable.

45. Identification of the Class Members is a matter capable of ministerial determination from Defendant's text message records.

COMMON QUESTIONS OF LAW AND FACT

46. There are numerous questions of law and fact common to members of the Class which predominate over any questions affecting only individual members of the Class. Among the questions of law and fact common to the members of the Class are:

a. Whether Defendant sent text message solicitations to Plaintiff and members of the FTSA "Stop" Class after they opted out of Defendant's communications;

b. Whether Defendant sent text message solicitations to Plaintiff and members of the FTSA Autodialer Class utilizing an automated system for the selection and dialing of telephone numbers;

c. Whether Plaintiff and members of the FTSA "Stop" Class revoked any consent they may have previously provided;

d. Whether Plaintiff and members of the FTSA Autodialer Class revoked any consent they may have previously provided;

e. The total number of text messages sent to Plaintiff and members of the FTSA "Stop" Class;

f. The total number of text messages sent to Plaintiff and members of the FTSA Autodialer Class;

g. Whether Defendant sent text messages to Plaintiff and members of each proposed class in order to solicit and market its services;

h. Whether Defendant is liable for damages, and the amount of such damages;

i. Whether Defendant violated the FTSA by continuing to text message Plaintiff and members of the FTSA "Stop" Class after they opted out of Defendant's communications; and

j. Whether Defendant violated the FTSA by text messaging Plaintiff and members of the FTSA Autodialer Class utilizing the Platform.

47. The common questions in this case are capable of having common answers. If Plaintiff's claim that Defendant routinely transmits calls to telephone numbers assigned to cellular telephone services is accurate, Plaintiff and the Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

**<u>TYPICALITY</u>**

48. laintiff's claims are typical of the claims of the Class members, as they are all based on the same factual and legal theories. Specifically, Plaintiff, like members of the FTSA "Stop" Class, opted out of Defendant's text messages, but continued to receive texts from Defendant. Additionally, Plaintiff, like members of the FTSA Autodialer Class, received text messages utilizing the Platform,

and after having revoked consent. Plaintiff, like each member of the proposed classes, received the same or similar text message solicitation regarding Defendant's available homes, properties, and/or building services, after having requested for the messages to stop. Accordingly, Plaintiff's and each class's claim are very similar, if not identical: they arise from the same conduct, the legal bases are the same, and the facts are similar (if not identical).

**PROTECTING THE INTERESTS OF THE CLASS MEMBERS**

49. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Class, and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

**PROCEEDING VIA CLASS ACTION IS SUPERIOR AND ADVISABLE**

50. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Class are in the millions of dollars, the individual damages incurred by each member of the Class resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

51. The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

**COUNT I**
**VIOLATION OF Fla. Stat. § 501.059(5)**
**(On Behalf of Plaintiff and the FTSA "STOP" Class)**

52. Plaintiff re-alleges and incorporates the foregoing allegations set forth in paragraphs 1 through 51 as if fully set forth herein.

53. In pertinent part, the FTSA provides:

> A telephone solicitor or other person may not initiate an outbound telephone call, text message, or voicemail transmission to a consumer, business, or donor or potential donor who has previously communicated to the telephone solicitor or other person that he or she does not wish to receive an outbound telephone call, text message, or voicemail transmission:
>
> (a) Made by or on behalf of the seller whose goods or services are being offered; or
>
> (b) Made on behalf of a charitable organization for which a charitable contribution is being solicited.

Fla. Stat. § 501.059(5).

54. "'Telephone solicitor' means a natural person, firm, organization, partnership, association, or corporation, or a subsidiary or affiliate thereof, doing business in this state, who makes or causes to be made a telephonic sales call, including, but not limited to, calls made by use of automated dialing or recorded message devices." Fla. Stat. § 501.059(1)(i).

55. Defendant is a telephone solicitor as defined under the FTSA.

56. Plaintiff and the Class Members are consumers who received one or more text messages regarding Defendant's goods and services after they communicated to Defendant that they did not wish to receive Defendant's text messages.

57. Plaintiff and the Class members made requests to Defendant not to receive texts from Defendant.

58. Defendant continued to text message Plaintiff and the Class Members to harass them into making purchases from Defendant.

59. Defendant failed to honor Plaintiff and the Class Members' opt-out requests.

60. As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation.

61. Plaintiff requests for this Court to enter an Order granting the relief outlined in the Prayer for Relief below.

**COUNT II**
**VIOLATION OF FLA. STAT. § 501.059(8)(a)**
**(On Behalf of Plaintiff and the FTSA Autodialer Class)**

62. Plaintiff re-alleges and incorporates the allegations set forth in paragraphs 1 through 51 as if fully set forth herein.

63. It is a violation of the FTSA to "make or knowingly allow a telephonic sales call to be made if such call involves an automated system for the selection or dialing of telephone numbers or the playing of a recorded message when a connection is completed to a number called without the prior express written consent of the called party." Fla. Stat. § 501.059(8)(a).

64. A "telephonic sales call" is defined as a "telephone call, text message, or voicemail transmission to a consumer for the purpose of soliciting a sale of any consumer goods or services, soliciting an extension of credit for consumer goods or services, or obtaining information that will or may be used for the direct solicitation of a sale of consumer goods or services or an extension of credit for such purposes." Fla. Stat. § 501.059(1)(i).

65. Plaintiff and the Class members revoked any consent they may have provided Defendant by responding with a "stop" or similar opt-out instruction.

66. In violation of the FTSA, Defendant made and/or knowingly allowed telephonic sales calls (texts) to be made to Plaintiff and the Class members without Plaintiff's and the Class members' prior express written consent.

67. Defendant made and/or knowingly allowed the telephonic sales texts to Plaintiff and the Class members to be made utilizing an automated system for the selection and dialing of telephone numbers.

68. As a result of Defendant's conduct, and pursuant to § 501.059(10)(a) of the FTSA, Plaintiff and Class members were harmed and are each entitled to a minimum of $500.00 in damages for each violation.

69. Plaintiff requests for this Court to enter an Order granting the relief outlined in the Prayer for Relief below.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above, and appointing Plaintiff as the representative of the Classes and Plaintiff's counsel as Class Counsel;

a) An award of statutory damages for Plaintiff and each member of the Classes as applicable under the FTSA;

b) An order declaring that Defendant's actions, as set out above, violate the FTSA;

c) Such further and other relief as the Court deems necessary.

## JURY DEMAND

Plaintiff hereby demand a trial by jury.

## DOCUMENT PRESERVATION DEMAND

Plaintiff demands that Defendant takes affirmative steps to preserve all records, lists, electronic databases or other itemization of telephone numbers associated with Defendant and the communication or transmittal of the text messages as alleged herein.

Dated: September 10, 2025

**EISENBAND LAW, P.A.**

*/s/ Michael Eisenband*
Michael Eisenband
Florida Bar No. 94235
515 E. Las Olas Boulevard, Suite 120
Ft. Lauderdale, Florida 33301
Email: MEisenband@Eisenbandlaw.com
Telephone: 954.533.4092

By: */s/ Manuel Hiraldo*
**HIRALDO P.A.**
Manuel S. Hiraldo
Florida Bar No. 030380
401 E. Las Olas Boulevard
Suite 1400
Ft. Lauderdale, Florida 33301
Email: mhiraldo@hiraldolaw.com
Telephone: 954.400.4713
**LEAD COUNSEL**
*Attorneys for Plaintiff*